UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VANCE R. SCOTT SR. | * | CIVIL ACTION |
| VERSUS | * | NO. 22-508 |
| PAUL SCHNIEDER, ET AL. | * | SECTION "M" (2) |

**REPORT AND RECOMMENDATION**

This is a civil action brought by Vance R. Scott Sr. ("Scott") under 42 U.S.C. § 1983 against 24th Judicial District Court Commissioner Paul Schnieder, Jefferson Parish District Attorney Paul Connick Jr., Assistant District Attorney Ralph Alexis IV, public defender K. Martinez, 24th Judicial District Court Judge June Darensburg, 29th Judicial District Judge Lauren Lemmon, Deputy Moody, Lt. Berrian and Sheriff Joseph Lopinto III, St. Charles Parish Director of Legal Services Corey Oubre, public defender Jaunita Marino, St. Charles Parish Assistant Director of Legal Services Robert Raymond, Joseph L. Perez, and the Hahnville Department of Planning and Zoning.  ECF No. 3, at 4, 6; ECF No. 3-2, at 1-3.  Plaintiff is a prisoner incarcerated in Jefferson Parish Correctional Center in Gretna, Louisiana.  ECF No. 3, ¶ II(A), at 2.  He filed this § 1983 complaint *pro se* and *in forma pauperis* asserting a litany of claims under state and federal law against defendants, whom he sues in their individual capacities.  *See generally* ECF Nos. 3, 3-2.  Although Plaintiff did not complete the section of the form complaint for relief sought (ECF No. 3, ¶ V, at 5), he appears to seek release from custody, damages of $2.8 million and punitive damages of $10 million.  *Id.* at 15.

This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. LR 73.2(A).

1

I.    BACKGROUND

    A.    **Factual Allegations**

A review of Plaintiff's filings indicate that he was charged with domestic abuse-strangulation and domestic abuse child endangerment in violation of La. Rev. Stat. § 14:35.3(I) and (L). ECF No. 3-2, at 6-7. After his release on bond on October 20, 2021, the alleged victim contacted District Attorney Connick's office to recant her accusations and notified the police that she did not wish to press charges. *Id.* at 7. Assistant District Attorney Alexis dropped the domestic abuse-strangulation charges (La. Rev. Stat. § 14:35.3(L)), but did not drop the domestic abuse-child endangerment charges (La. Rev. Stat. § 14:35(I)). *Id.* He contends that D.A. Connick accepted accusations without a victim and used testimonial hearsay interrogations as evidence to hold him hostage. ECF No. 3, at 9.

Plaintiff also claims that, on January 4, 2022, he was held and deprived of his liberty for "discharge of bail," which he characterizes as an effort to racketeer, extort, and utilize imprisonment to intimidate him to incriminate himself, by Commissioner Schneider, D.A. Paul Connick, and Asst. D.A. Ralph Alexis, IV. ECF No. 3, at 7; No. 3-1 at 8-12. Plaintiff contends he was falsely imprisoned for 30 days for contempt of court and that, during zoom proceedings on January 20 and 21, 2022, his liberty was violated when he was told to "shut him up" and was muted during a video hearing. ECF No. 3, at 7; No. 3-1 at 8-12.

Evidently attorney Perez was appointed to represent Plaintiff, after which Plaintiff filed *pro se* motions for discovery that were ignored by the D.A. and judge who only addressed the motion filed by counsel. ECF No. 3, at 10-11. Plaintiff claims that he told the court that he fired Perez for being ineffective and incompetent as Perez was part of the conspiracy, and that Perez withheld discovery from Plaintiff even though Judge Darensburg made him standby counsel. ECF

2

No. 3, at 10-11; ECF No. 3-2, at 12-16. He contends that Judge Darensburg did not follow procedure. ECF No. 3, at 13.

Plaintiff also asserts claims relating to his detention. He alleges that Sheriff Lopinto has subjected him to cruel and unusual punishment, excessive force, abuse, and torture during his incarceration at JPCC, asserting that the jail has mold everywhere and is infested with gnats, rats, and roaches. *Id.* at 11. He contends that there are no cameras to oversee the guards who sleep on the job or stay on their phones, making the jail unsafe. *Id.* at 12. Plaintiff alleges that he is being tortured with suicide watch for expressing his depression, which makes his mental state worse. *Id.* He asserts that CorrectHealth refuses to give medical assistance to inmates who do not pay, and Plaintiff has misaligned hips, compressed spinal cord, and sciatic nerve damage, but was told by the nurses that there was nothing medical could do for him unless he filled out a sick call form. *Id.* at 11. He also complains that, on January 30, 2022, Lt. Berrian placed him in a cold room without covers or a mattress for over 10 hours to intimidate him into incriminating himself, Sgt. Silbernagel (not named as a defendant) used excessive force while plaintiff was handcuffed, bending plaintiff's wrist and causing injuries to his forearm (i.e. bruised tendon), and nurse Brandy Lee (also not named as a defendant) refused to check his injuries. ECF No. 3, at 10-13.

Plaintiff complains that the JPCC disciplinary process is useless because the officers are incompetent and never investigate complaints thoroughly. *Id.* at 13. He claims that, with the lack of cameras, they blame everything on Plaintiff and tell him to file different forms for each incident and that it takes too long to get a response and go through the procedure. *Id.* He also asserts that his federal lawsuit was delayed because he did not receive his mail timely and SIU Deputy Rivers (also not named as a defendant) would not let him sign for his mail. *Id.*

Plaintiff also asserts claims against St. Charles Parish officials. Specifically, he alleges that, on June 22, 2021, St. Charles Parish through Judge Lemmon, Juanita Marino, Corey Oubre, and Robert Raymond, gave his family's property to an artificial entity, which was theft of property, and that they stole his truck from in front of his family's property without due process of law. *Id.* at 14; ECF No. 3-2 at 16.

## II.  LEGAL STANDARD

### A.  Statutorily Required Screening

A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing.[1] Complaints by prisoners must be dismissed upon review if they are frivolous and/or fail to state a claim.[2] The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[3] "A federal court may dismiss a claim *in forma pauperis* 'if satisfied that the action is frivolous or malicious.'"[4] A complaint is frivolous "if it lacks an arguable basis in law or fact."[5]

A complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[6] or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."[7] A complaint

---

[1] 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).
[2] 28 U.S.C. § 1915A(b)(1); *see also id.* § 1915(e)(2)(B).
[3] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[4] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).
[6] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992)
[7] *Moore*, 976 F.2d at 270. This framework "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[8] "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[9] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."[10] A prisoner's *in forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

**B.     Statutorily Mandated Review: Maliciousness**

Pursuant to § 1915(e) and § 1915A, a court also may dismiss a prisoner's complaint as malicious when it "seek[s] to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the [prisoner]."[11] Thus, a duplicative case is malicious "if it involves 'the same series of events' and allegations of 'many of the same facts as an earlier suit.'"[12]

The Fifth Circuit has long held that filing a successive civil action that duplicates claims in a previous lawsuit qualifies as malicious under the screening statute.[13] That the prior cases may have involved different defendants does not affect the maliciousness of a successive action.[14]

---

[8] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation omitted).
[9] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[10] *Moore*, 976 F.2d at 269.
[11] *Wilson v. Lynaugh*, 878 F. 2d 846, 850 (5th Cir. 1989).
[12] *Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013) (quoting *Bailey v. Johnson*, 846 F. 2d 1019, 1021 (5th Cir. 1988)).
[13] *See Bailey*, 846 F. 2d at 1021.
[14] *See id.*

Likewise, the assertion of a new claim in a successive complaint that arises from the same allegations of a prior complaint is also considered a malicious.[15] Moreover, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another *pending* federal lawsuit by the same plaintiff."[16] District courts are "'vested with especially broad discretion' in determining whether such a dismissal is warranted."[17]

### III.   LAW AND ANALYSIS

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[18]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[19] Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[20] A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law,

(2) that occurred under color of state law, and

(3) was caused by a state actor.[21]

---

[15] *See Potts v. Texas*, 354 F. App'x 70, 71 (5th Cir. 2009).
[16] *Pittman v. Moore*, 980 F. 2d 994, 995 (5th Cir. 1993) (emphasis added) (internal quotation marks omitted); *see Lewis*, 508 F. App'x at 344; *Bailey*, 846 F. 2d at 1021 ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d).").
[17] *Bailey*, 846 F. 2d at 1021.
[18] 42 U.S.C. § 1983.
[19] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).
[20] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[21] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

A. **Claims Against the St. Charles Parish Defendants**

Plaintiff's Complaint alleges that St. Charles Parish, through Judge Lemmon, Juanita Marino, Corey M. Oubre, and Robert L. Raymond, created an artificial entity, took Plaintiff's truck, and gave the truck to that entity. ECF No. 3, at 14. Further, he alleges that the truck was not involved in a crime and was not blocking a driveway; thus, taking the truck was theft of property and violated his right to due process of law. *Id.* Previously, Plaintiff filed Civil Action No. 20-0043 against Judge Lemmon and others about the same incident. ECF No. 1, at 8. Plaintiff alleged that Jack Gilboy created a fraudulent report/citation that allowed a tow-truck company to remove Plaintiff's truck from a private parking lot, without notice, permission/complaint from owner of the private property, and there was no crime committed. *Id.*

Scott's current complaint includes the same or similar claims against Judge Lemmon, Juanita Marino, Corey Oubre, and Robert Raymond regarding his property as that raised in his previous complaint filed on December 23, 2019. As his current complaint involves "the same series of events" and alleges "many of the same facts" that are addressed in his other, previously filed and pending complaint,[22] Scott's claims are repetitive and therefore considered malicious. His claims should be dismissed as malicious under 28 U.S.C. § 1915, § 1915A.

B. **Claims Against Judge Darensburg, Commissioner Schnieder and Deputy Moody**

Plaintiff's claims against Judge Darensburg and Commissioner Schnieder, the judge and commissioner presiding over his criminal case, as well as Deputy Moody, the deputy acting under the Commissioner's orders, are frivolous and should be dismissed.

---

[22] *Bailey*, 846 F.2d at 1021.

7

Judicial officers enjoy absolute judicial immunity for acts performed within their jurisdictional authority.[23] The Federal Courts Improvement Act of 1996 ("FCIA") amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable."[24] Thus, injunctive relief not based on violation of a declaratory decree is unavailable against a judge in his or her role as a judicial officer, whether individually or in an official capacity.[25]

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"[26] "Disagreeing with a judge's actions does not justify depriving that judge of his or her immunity."[27] Instead, absolute judicial immunity is overcome in only two narrow circumstances, neither of which would apply here.[28] First, a judge is not immune from liability for non-judicial actions, i.e. actions outside of the judge's judicial role.[29] Second a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.[30]

---

[23] *See Mays v. Sudderth*, 97 F.3d 107, 110-11 (5th Cir. 1996).
[24] 42 U.S.C. § 1983.
[25] *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir.2005) (recognizing that the FCIA of 1996 precludes injunctive relief for suits against a judicial officer acting in a judicial capacity); *Guerin v. Higgins*, 8 F. App'x 31, 32 (2d Cir. Apr. 11, 2001) (unpublished); *Nollet v. Justs. of the Trial Ct. of the Commonwealth of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000); accord *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to Section 1983 limited relief available from a judge to declaratory relief); *cf. LaBranche v. Becnel*, 559 F. App'x 290 (5th Cir. 2014) (recognizing that even when judicial immunity does not bar claims for injunctive relief, relief can be granted because federal courts have no authority to direct state courts or their judicial officers in the performance of their duties) (citing *Moye v. Clerk, DeKalb Cnty. Superior Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973)).
[26] *Mays*, 97 F.3d at 111; *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) ("The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant.") (citing *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991)).
[27] *Greenlee v. U.S. Dist. Ct.*, No. 09-2243-cv-FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump v. Sparkman*, 435 U.S. 349, 363 (1978)).
[28] *Mireles*, 502 U.S. at 11-12.
[29] *Id.*
[30] *Id.*

To determine whether a judge's actions are "judicial in nature," a court considers:

(1) whether the precise act complained of is a normal judicial function;
(2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;
(3) whether the controversy centered around a case pending before the court; and
(4) whether the acts arose directly out of a visit to the judge in an official capacity.[31]

In sum, "[a] judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'"[32]

Plaintiff does not complain of any actions taken by Judge Darensburg, Commissioner Schnieder, or Deputy Moody that were non-judicial in nature or taken in clear absence of all jurisdiction. While he disagrees with the judicial officer's orders and actions taken in direct connection with his criminal case, Judge Darensburg's and Commissioner Schnieder's decisions and rulings are inextricably intertwined with their official functions and duties as a presiding officer. Although Deputy Moody is not a judicial officer, he acted in a direct order from Commissioner Schnieder.[33] As such, plaintiff's § 1983 claim against Judge Darensburg, Commissioner Schnieder, and Deputy Moody in their individual capacity fails due to the absolute judicial immunity that they enjoy.[34]

The claims would fare no better had Plaintiff asserted claims against these defendants in their official capacities. A judicial officer undertaking judicial functions acts as a state official and state officials acting in that capacity are not considered to be "persons" within the meaning of

---

[31] *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)).
[32] *Boyd*, 31 F.3d at 285 (quoting *Mireles*, 502 U.S. at 12).
[33] "Absolute quasi-judicial immunity derives from judicial immunity, and protects government officials who perform functions that require them to act in accordance with a judge's direct orders." *Burgess v. Cox*, No. 4:14–CV–466–ALM–CAN, 2015 WL 5578305 at *5 (E.D. Tex., 2015) (citing *Mays*, 97 F.3d at 113; *Dudley v. Johnson*, No. 95-1755, 1995 WL 710916, at *2 (E.D. La. Nov. 30, 1995)).
[34] *Stump*, 435 U.S. at 349; *Graves v. Hampton*, 1 F.3d 315, 317-18 (5th Cir. 1993).

§ 1983.[35] Further, an official-capacity claim against a judicial officer is, in reality, a claim against the state itself, any such claim is barred by the Eleventh Amendment.[36]

Plaintiff's § 1983 claims against Judge Darensburg, Commissioner Schnieder, and Deputy Moody must be dismissed pursuant to § 1915(e) and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### C.      Claims Against DA Connick and ADA Alexis

Plaintiff's claims against D.A. Connick and Asst. D.A Alexis are legally frivolous and should be dismissed.[37]

Plaintiff's claims against Connick and Alexis are based on their purported actions in bringing criminal charges against him that resulted in his pretrial detention, which are protected actions taken within the scope of their employment as District Attorney and Assistant District Attorney. To the extent he purports to assert claims against them in their individual capacities, they enjoy absolute immunity from suit for monetary damages under § 1983 related to their roles and actions as prosecutors.[38]

"A prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'"[39] Furthermore, "[a] prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in

---

[35] *Daves v. Dall. Cnty., Tex.*, 22 F.4th 522, 535-41 (5th Cir. 2022); *Washington v. Louisiana*, No. 09-CV-3186, 2009 WL 2015556 at *5 (E.D. La. Jun. 30, 2009).
[36] *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986); *Doris v. VanDavis*, No. 08-CV-4138, 2009 WL 382653 at *2 (E.D. La. Feb. 12, 2009).
[37] *See Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).
[38] *See Imbler v. Pachtman*, 424 U.S. 409 (1976); *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016); *Beard v. Wolf*, No. 13-4772, 2014 WL 3687236 at *2-3 (E.D. La. Jul. 22, 2014).
[39] *Esteves v. Brock*, 106 F. 3d 674, 677 (5th Cir. 1997) (quoting *Imbler*, 424 U.S. at 430-31); *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009).

the clear absence of all jurisdiction."[40] The prosecutorial immunity also applies during "actions apart from the courtroom."[41] Plaintiff's claims against Connick and Alexis for unlawful pretrial detention are thus barred by prosecutorial immunity.

The claims would fare no better had Plaintiff asserted claims against these defendants in their official capacities. A claim against the District Attorney in his official capacity is suit against Terrebonne Parish, the entity he represents.[42] In that respect, "municipalities cannot be held liable for constitutional torts under § 1983 'on a respondeat superior theory,' but they can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[43] Thus, to state a non-frivolous claim against a district attorney in an official capacity, plaintiff must establish that the named defendant is a final Parish policymaker and identify a Parish policy or custom which allegedly caused the deprivation of his constitutional rights,[44] which Plaintiff does not.

Plaintiff's claims against Connick and Alexis should be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous, for failure to state a claim for which relief can be granted, and for being asserted against an immune defendant.

---

[40] *Kerr v. Lyford*, 171 F. 3d 330, 337 & n.10 (5th Cir. 1999), *abrogated in part on other grounds by Castellano v. Fragozo*, 352 F. 3d 939 (5th Cir. 2003); *Champluvier v. Couch*, 309 F. App'x 902, 903 (5th Cir. 2009).
[41] *Imbler*, 424 U.S. at 431 n.33.
[42] *Connick v. Thompson*, 563 U.S. 51, 59-60 (2011) (a district attorney in Louisiana is a Parish official and claims against Orleans Parish District Attorney in an official capacity are addressed under the standards of *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)); *Burge v. Par. of St. Tammany*, 187 F. 3d 452, 470 (5th Cir. 1999) ("For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities."); *see also Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (refusing to apply immunities for personal liability to *Monell* claims against local governments because "there is no tradition of immunity for municipal corporations").
[43] *Burge*, 187 F. 3d at 470 (quoting *Monell*, 436 U.S. at 691).
[44] *Rinker v. New Orleans Dist. Atty.*, No. 10-CV-0810, 2010 WL 2773236 at *4-5 (E.D. La. Jun. 15, 2010), *R.&R. adopted*, 2010 WL 2773383, at *1 (E.D. La. Jul. 12, 2010) (citing *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003)).

### D.   Claims Against Martino, Martinez and Perez

As outlined above, to state a claim under § 1983, a plaintiff must allege that a defendant was acting under color of state law when his constitutional rights were violated.[45]  A defendant's actions must be "fairly attributable to the state" for there to be liability under § 1983.[46]

Plaintiff alleges that his appointed criminal defense attorney, Martinez, fraudulently entered a plea of not guilty against Plaintiff's will.  ECF No. 3, at 9.  Plaintiff also alleges that his second appointed criminal defense attorney, Joseph Perez, had to be fired because Perez attempted to withdraw and abandon various motions filed by Plaintiff.  *Id.* at 10.  Plaintiff further alleges that, after obtaining discovery, Perez refused to deliver the discovery to Plaintiff even though Judge Darensburg ordered him to standby counsel.  *Id.* at 11.  Additionally, Plaintiff, without providing details of any specific involvement, names public defender Juanita Marino as a part of the claim against the St. Charles Parish defendants.  *Id.* at 14.

Attorneys, whether privately obtained or publicly appointed, are not state actors as a matter of law for purposes of a § 1983 claim.[47]  As Martino, Martinez, and Perez are not state actors that can be held liable under § 1983, Plaintiff's § 1983 claims against him must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### E.   Claims Against Sheriff Lopinto

Plaintiff named Sheriff Joe Lopinto III as a Defendant based solely upon his official responsibilities over JPCC staff.  Broadly construed, Plaintiff's complaint alleges that Sheriff

---

[45] *Daniels v. Williams*, 474 U.S. 327 (1986); *James v. Tex. Collin Cnty.*, 535 F. 3d 365, 373 (5th Cir. 2008); *Calhoun v. Hargrove*, 312 F. 3d 730, 734 (5th Cir. 2002).
[46] *West v. Atkins*, 487 U.S. 42, 49 (1988); *Johnson ex rel. Wilson v. Dowd*, 305 F. App'x 221, 223 (5th Cir. 2008); *Cornish v. Corr. Servs. Corp.*, 402 F. 3d 545, 549 (5th Cir. 2005).
[47] *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Small v. Dall. Cty.*, 170 F. App'x 943, 944 (5th Cir. 2006) (citing *Hudson v. Hughes*, 98 F. 3d 868, 873 (5th Cir. 1996); *Mills v. Crim. Dist. Ct. No. 3*, 837 F. 2d 677, 679 (5th Cir. 1988)).

Lopinto is vicariously liable for Plaintiff's medical care, conditions of confinement, disciplinary proceedings, and the Sheriff's subordinates' use of force and failure to intervene during physical altercations.

To hold Sheriff Lopinto personally liable, Plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [Lopinto] . . . and the alleged constitutional violation."[48] As stated above, Plaintiff has failed to establish that Sheriff Lopinto personally was involved in any acts causing the deprivation of his constitutional rights. He further fails to allege that a causal connection exists between any act Sherriff Lopinto did and the alleged constitutional violations.

"There is no respondeat superior liability under section 1983."[49] Sheriff Lopinto therefore cannot be held liable under § 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for Plaintiff's injuries were in his employ or under his supervision.[50] A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.[51] No such unconstitutional custom, usage or policy for which Sheriff Lopinto can be held constitutionally liable has been alleged by Plaintiff, and thus, he fails to state a claim for relief against him under § 1983.[52]

---

[48] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006).
[49] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1115.
[50] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).
[51] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).
[52] *Monell*, 436 U.S. at 691–95; *Thompson*, 348 F. App'x at 921–22; *Mouille*, 977 F.2d at 929.

Plaintiff has failed to establish any of the foregoing essential elements of a supervisory claim under § 1983 or to allege that Sheriff Lopinto was personally involved in any acts causing the alleged deprivation of his constitutional rights. Accordingly, Plaintiff's claims against Sheriff Lopinto should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[53]

### F.     Claims Against Lt. Berrian

In his complaint, Plaintiff alleges that on January 30, 2022, Lt. Berrian placed him in a cold room for over ten hours with no covers, mattress, or anywhere to lay down, which subjected him to hypothermic conditions. ECF No. 3, at 12. Plaintiff further alleges that Lt. Berrien was acting "arbitrarily and capriciously, intentional and deliberate, with gross negligence . . . ." *Id*.; ECF No. 3-1, at 17.

The Eighth Amendment prohibits cruel and unusual punishment.[54] State prisoners must be subject to humane conditions of confinement, and the conditions "must not involve the wanton and unnecessary infliction of pain."[55] "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[56] Prison officials are thus required to provide humane conditions of confinement and ensure that inmates receive adequate food, water, clothing, shelter, and medical care.[57] Prison officials' wanton and deliberate indifference to these basic human needs violates the Eighth

---

[53] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).
[54] U.S. CONST. amend. VIII.
[55] *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The "official conduct must be 'wanton,' which is defined to mean 'reckless.'" *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).
[56] *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (alterations omitted)).
[57] *Farmer*, 511 U.S. at 832; *Flores v. TDCJ Transitorial Plan. Dept.*, No. 14-CV-283, 2015 WL 10436114, at *2 (S.D. Tex. Nov. 17, 2015).

Amendment.[58]  Adverse conditions of temporary and short duration, however, rarely rise to the level of a constitutional violation.[59]

The Eighth Amendment ensures the safety and wellbeing of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.[60]  A claim is classified according to whether it concerns a "condition of confinement" or an "episodic act or omission."[61]  To establish a conditions of confinement claim, Plaintiff must establish: (1) that the deprivation was sufficiently serious and (2) that the prison official possessed a sufficiently culpable state of mind.[62]  Sufficiently serious act or omission must result in denial of the "minimal civilized measure of life's necessities."[63]  For a failure to prevent harm claim, an inmate must show that the

---

[58] *Farmer*, 511 U.S. at 834, 837.

[59] *Davis*, 157 F.3d at 1006 (inmate suffered no "extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in a filthy "management cell" for only three days) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (Inmate who complained of "unsanitary practice[s]," including unsanitary water fountains, toilets leaking water, and unsanitized living quarters, failed to state a claim.); *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) ("Courts have repeatedly held 'that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions.'") (quoting *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)); *see also Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (Unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant ... injury resulting from the challenged conditions."); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (noting the intolerable conditions lasted not more than 24 hours and, therefore, no constitutional violation was found); *Daigre v. Maggio*, 719 F.2d 1310, 1312-13 (5th Cir. 1983) (holding 10-day administrative lockdown that subjected prisoners to "dirty and filthy" mattresses, laundered blankets at most once a week or even up to three weeks, and no soap to wash hands with between using the toilet and eating meals was not sufficient to establish constitutional deprivation where some measure of hygiene was provided by available water and utensils at meals).  *But see Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019) (holding that prisoner forced to live in two squalid cells for 6 days articulated an Eighth Amendment claim where the first cell's entire surface—floors, ceilings, windows, walls and water faucet—was covered with massive amounts of feces and emitted a strong fecal odor and second cell was extremely cold and had no water fountain, no bunk, and no toilet—only a drain in the floor that was clogged and smelled strongly of ammonia which plaintiff refused to use because it would spill onto the floor where he had to sleep), *aff'd in part and vacated on other grounds by Taylor v. Riojas*, 141 S. Ct. 52 (2020); *Quintanilla v. Araiza*, No. 20-927, 2021 WL 2019204, at *9 (W.D. Tex. May 20, 2021) (involving 3-hour deprivation of bathroom and sitting for another 1½-hours in soiled clothing).

[60] *See Hare v. City of Corinth, Ms.*, 74 F.3d 633, 639 (5th Cir. 1996).  The proper analysis of each category of claims is the same, because "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners.  *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citing *Hare*, 74 F.3d at 643-44).

[61] *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999) (citation omitted).

[62] *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Farmer*, 511 U.S. at 834).

[63] *Farmer*, 511 U.S. at 834.

15

conditions posed a substantial risk of serious harm.[64] The second requirement, the culpable state of mind, necessitates a finding that the official(s) acted with deliberate indifference to inmate health and safety.[65] Deliberate indifference requires a showing that the defendant officials "(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[66]

Given the relatively short duration, Plaintiff's Complaint fails to allege a sufficiently serious deprivation of "minimal civilized measure of life's necessities" or that Lt. Berrian possessed a culpable state of mind. His § 1983 claim should be dismissed under 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e, as frivolous or for failure to state a claim for which relief can be granted.

### G. Habeas Relief

To the extent that Plaintiff's complaint can be read to challenge the fact and duration of his confinement, he must pursue that claim on habeas corpus grounds.[67] However, a habeas request is not properly asserted or sought in this civil rights action. Further, Scott has not shown that he has exhausted available state-court remedies, and his release from custody is not an available remedy under § 1983."[68] Scott would have to present any habeas claims he may have in the proper habeas corpus proceeding, not this § 1983 complaint.. He therefore fails to state a claim for which relief can be granted under § 1983.

---

[64] *Id.*
[65] *Herman*, 238 F.3d at 664 (citing *Palmer*, 193 F.3d at 352).
[66] *Id.* (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)).
[67] *Hernandez v. Spencer*, 780 F.2d 504, 505 (5th Cir. 1986).
[68] *See Smith v. Lafourche Par.*, No. 21-1714, 2021 WL 4975698, at *3 (E.D. La. Sep. 30, 2021) (discussing when habeas relief can be granted), *R.&R. adopted,* 2021 WL 4972374, at *1 (E.D. La. Oct. 26, 2021); *accord Lerille v. Lafourche Par.*, No. 21-1729, 2021 WL 4975754, at *3 (E.D. La. Sep. 30, 2021), *R.&R. adopted,* 2021 WL 4972369, at *1 (E.D. La. Oct. 26, 2021).

IV.   **CONCLUSION**

Plaintiff's complaint should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2), § 1915A and/or 42 U.S.C. § 1997e(c)(1) on the basis that the claims against the St. Charles Parish defendants (Judge Lemmon, Oubre, Marino, Raymond and the zoning commission) are malicious, having been resolved against plaintiff in Civil Action 20-43"A"(3).  The claims against Judge Darensburg and Commissioner Schnieder are barred by judicial immunity, the claims against Deputy Moody are barred as she was acting at the direction of a judicial officer, and the claims against Connick and Alexis are barred by prosecutorial immunity.  Attorneys/public defenders Marino, Martinez and Perez are not "persons" for purposes of § 1983.  Plaintiff has not stated a claim against Sheriff Lopinto because he fails to identify any personal action or inaction on his behalf and simply seeks to hold him responsible as the Sheriff and "overseer" of the JPCC, Plaintiff has not stated a non-frivolous claim against Lt. Berrian for temporarily placing him in a cell without covers or a mattress and he fails to name a defendant who allegedly subjected him to excessive force or inadequate medical care.  Thus, Plaintiff's allegations fail to establish a cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.[69]  Having recommended dismissal of his federal claims, the Court should decline to exercise jurisdiction over Plaintiff's state law claims.

V.   **RECOMMENDATIONS**

For the foregoing reasons,

---

[69] The court must "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel," *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011), *cert. denied*, 565 U.S. 1263 (2012) (quotation omitted); *Moore*, 30 F.3d at 620.

**IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous under 28 U.S.C. § 1915(e)(2), § 1915A, and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object..[70]

New Orleans, Louisiana, this 28th day of June, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[70] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).